1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHNNY OLIVER,

11            Petitioner,              No. CIV S-02-1147 GEB DAD P

12       vs.

13   D. L. RUNNELS, Warden, et al.,

14            Respondents.            FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the judgment of conviction

18   entered against him in the Sacramento County Superior Court on charges of second degree

19   robbery, being an ex-felon in possession of a firearm, and evading a police officer.  He seeks

20   relief on the grounds that: (1) his trial counsel rendered ineffective assistance; (2) the trial court

21   erred in denying his motion for new trial; and (3) he was improperly sentenced under California's

22   Three Strikes Law.  Upon careful consideration of the record and the applicable law, the

23   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

24   /////

25   /////

26   /////

## PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury convicted defendant Johnny Ray Oliver of second degree robbery (Pen. Code, § 211)[2], possession of a firearm by a convicted felon (§ 12021, subd. (a)), and fleeing a pursuing peace officer (Veh. Code, § 2800.2). The jury also found true an allegation that defendant personally used a firearm in the commission of the robbery. (§ 12022.53, subd. (b).) The trial court found defendant had suffered two prior serious felony convictions within the meaning of section 667, subdivision (a), section 667, subdivisions (b) - (I), and section 1170.12.

The trial court denied defendant's motion to strike the priors and sentenced him to 25 years to life on each count, for a total of 75 years to life plus a consecutive 20 year sentence for the sections 667, subdivision (a) and 12022.53 enhancements.

\* \* \*

Christopher Atchison and Edward Casillas were working the graveyard shift at the AM/PM market at the corner of Fair Oaks and Marconi on January 7, 1999. Around 2:20 in the morning a man entered the store. He walked up to the counter, pulled out a gun, and told Atchison to give him the money. The person handed Atchison a plastic bag, into which Atchison placed all of the money from the cash register. It consisted of $177 in ones, fives and tens. The person ordered Atchison and Casillas to lie down on the floor, then he made his escape. Atchison called 911.

Atchison told the responding officer the robber was a Black male, approximately 23 years old, approximately six feet, one inch tall, weighing approximately 180 pounds. He described the robber as wearing a black jacket with a black corduroy collar, a black hooded sweatshirt, and dark faded jeans.

At 2:35 a.m. California Highway Patrol (CHP) officers Michael Burgett and Randy Lyons were sitting on the right shoulder of northbound Watt Avenue, just north of the U.S. Highway 50 onramp. They clocked defendant's vehicle traveling southbound on Watt Avenue at 66 miles per hour in a 45 mile per hour zone. They pursued defendant's vehicle as it traveled east on Highway 50. When the officers caught up to defendant, they activated their overhead lights. Defendant began to slow down and moved over to the slow lane. Then he accelerated again, exiting at an off-ramp

---

[1]  The following summary is drawn from the June 27, 2001, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-5, filed on October 3, 2003, as exhibit C to respondents' answer.

[2]  References to a section are to the Penal Code.

approximately 90 miles an hour.  Defendant's car spun out of control into a dirt field.  Defendant jumped out of the car and ran across the dirt field into an area of businesses.

In securing defendant's vehicle, officer Burgett found a Colt white steel revolver on the bench seat next to where the driver had been sitting.

Meanwhile, CHP officers Andrew Silcox and his partner, responding to a call, drove past the area where officer Burgett's pursuit of defendant had terminated, and into the adjacent business district.  There they spotted defendant running.  They ran after him, grabbed him, and took him to the ground.  As defendant fell to the ground, a wad of money spilled out of his jacket.  When it was counted, it was found to total $179.81 in ten, five, and one dollar bills, plus change.

Atchison was taken for an in-field identification.  He was 90 percent sure defendant was the person who robbed him, but was unable to make a positive identification because the robber's face had been partially covered during the robbery.  However, Atchison recognized the revolver taken from defendant's car, and defendant's gloves and jacket.  Atchison said defendant was wearing the same type of jeans worn by the robber, and that defendant was approximately the same height and weight as the robber.  At the time of the in-field identification, Atchison thought defendant seemed to be older and darker complexioned than the person who robbed him.

The jeans defendant was wearing were blue Levi's, and looked almost new.  Defendant was not wearing a hooded sweatshirt, nor was one found in his car.  Defendant weighed 150 pounds when booked, and was five feet, 11 inches tall.  Atchison told a defense investigator, who interviewed him in July 1999, the robber had a deep scar on his nose.  Defendant had no scar on his nose.  Atchison testified he thought the robber's jacket had an emblem on the front.  He told the defense investigator it was a yellow and black DNYK symbol, and the gun used was a blue steel revolver.  The jacket worn by defendant had no symbol on it.  The revolver recovered from defendant's car was silver in color.

The distance from the AM/PM to the Watt Avenue on ramp to Highway 50 is 5.4 miles.  The driving time between the two points is approximately 10 minutes.

Detective Danny Minter interviewed defendant.  Minter advised defendant of his Miranda rights.[3]  The interview was videotaped.

---

[3]  <u>Miranda v. Arizona</u>, (1966) 384 U.S. 436 [16 L.Ed.2d 694].

3

1
2
3
4
5
6
7

Defendant told Minter he had been paid on the sixth of January and cashed his check the same day.  He was paid approximately $480.  Defendant told Minter he had gone to a card room late in the afternoon.  After he left the card room, he went to shoot dice in Oak Park.  There he met a man named Jason, and he and Jason went riding around.  He finally dropped off Jason in Rancho Cordova, off of Zinfandel.  As he was heading back home going west on Highway 50, he noticed a gun on the floor in front of the seat.  He decided to turn around and take the gun back to Jason.  He got off the freeway, went over the overpass, and got back on the freeway going east when the CHP stopped him.   He tried to get away when he realized the CHP was following him because he was on parole with a gun in the car.

8
9
10

Charlester Oliver, defendant's brother, testified he put the gun on the floor under the front seat of defendant's car.  He claimed he found the gun in a tool box inside an old car he bought.  The day before defendant was arrested, he took the gun out of the tool box and put it on the floor of defendant's car without telling defendant about it.

11

12

ANALYSIS

13

I.  Standards of Review Applicable to Habeas Corpus Claims

14          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

15   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

16   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

17   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

18   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

19   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

20   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

21   (1972).

22          This action is governed by the Antiterrorism and Effective Death Penalty Act of

23   1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

24   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

25   habeas corpus relief:

26   /////

4

1

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II.  Petitioner's Claims

A.  Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance because of numerous errors in conducting the defense.  After setting forth the applicable legal principles, the court will evaluate these claims in turn below.

/////

/////

1      1. <u>Legal Standards</u>

2          The Sixth Amendment guarantees the effective assistance of counsel.  The United

3   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

4   <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

5   counsel, a petitioner must first show that, considering all the circumstances, counsel's

6   performance fell below an objective standard of reasonableness.  See <u>Strickland</u>, 466 U.S. at

7   687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

8   result of reasonable professional judgment, the court must determine whether, in light of all the

9   circumstances, the identified acts or omissions were outside the wide range of professionally

10   competent assistance.  <u>Id.</u> at 690; <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).  In assessing an

11   ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's

12   performance falls within the 'wide range of professional assistance.'"  <u>Kimmelman v. Morrison</u>,

13   477 U.S. 365, 381 (1986) (quoting <u>Strickland</u>, 466 U.S. at 689).  There is in addition a strong

14   presumption that counsel "exercised acceptable professional judgment in all significant decisions

15   made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

16          Second, a petitioner must establish that he was prejudiced by counsel's deficient

17   performance.  <u>Strickland</u>, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

18   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

19   been different."  <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to undermine

20   confidence in the outcome."  <u>Id.</u>  See also <u>Williams</u>, 529 U.S. at 391-92; <u>Laboa v. Calderon</u>, 224

21   F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

22   performance was deficient before examining the prejudice suffered by the defendant as a result of

23   the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

24   lack of sufficient prejudice . . . that course should be followed."  <u>Pizzuto v. Arave</u>, 280 F.3d 949,

25   955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

26   /////

2.  Failure to Raise Miranda Issue

Petitioner claims that his trial counsel rendered ineffective assistance when he failed to raise a Miranda challenge to the admissibility of statements made by petitioner to police officers after his arrest.  The California Court of Appeal fairly summarized the background to this claim as follows:

> During detective Minter's interview with defendant, the following exchange occurred:
>
> "[Minter]: Well, then how is it that the – the gun that's used in the robbery, the clothing worn by the suspect you're wearing, and the – the gloves and the hat worn by the suspect in the robbery are in your car?
>
> "[Defendant]: Now, I mean, hell.  What – there's only one pair of gloves, one hat, one sweater –
>
> "[Minter]: Uh-huh.
>
> "[Defendant]:  – and pants.  I mean, it's only one pair?
>
> "[Minter]: That's right.
>
> "[Defendant]: (Inaudible.)
>
> "[Minter]: That just belong to you.  Okay?  There wasn't two of you in the car.  Okay?  You know, it's – we need to get s – we need to – we need to minimize this as best we can for you here, okay?
>
> "[Defendant]: It seem like what I need is a lawyer.
>
> "[Minter]: (Inaudible.)
>
> "[Defendant]: 'Cause I mean, I'm getting s – I'm getting straight jacked up to – t – t – committing a damned robbery.  He done seen my clothes and my gloves in the car.  I mean, hell.
>
> "[Minter]: Well, that's what – you know, they had – they had him come –
>
> "[Defendant]: I'm already convicted.
>
> "[Minter]: No, you're not."

(Opinion at 6-7.)

/////

1    Petitioner argues that the statements related above constituted an unequivocal

2  request for an attorney, at which point all questioning should have ceased.

3    The state court record reflects that petitioner was given a <u>Miranda</u> advisement

4  prior to being questioned by the police after his arrest.  (Clerk's Transcript on Appeal (CT) at 72-

5  74.)  Petitioner acknowledged that he understood his rights.  (<u>Id.</u>)  When asked if he had "any

6  problem" talking to the police, petitioner did not give an audible response but he immediately

7  started answering the officer's questions.  (<u>Id.</u> at 73-74.)  About halfway through the interview,

8  petitioner made the statements related above.  Immediately after petitioner made the statement,

9  "I'm already convicted" and Detective Minter responded, "No, you're not," petitioner initiated

10  additional conversation, stating, "They didn't see me."  (<u>Id.</u> at 126.)

11    The California Court of Appeal opined that petitioner's statement, "[i]t seem like

12  what I need is a lawyer" was not a clear invocation of his right to counsel, but was "an

13  ambiguous reference to needing a lawyer."  (Opinion at 8.)  Even assuming petitioner invoked

14  his right to counsel, however, the state court concluded that continued questioning by the police

15  was not improper because petitioner "clearly initiated" further communication.  (<u>Id.</u> at 8-9.)

16  Further, the circumstances demonstrated that petitioner made a knowing and intelligent waiver of

17  the right to counsel.  (<u>Id.</u>)  The state appellate court explained:

18    Defendant was not a neophyte to the criminal justice system, as
     evidenced by the fact that this is a third strike case.  He was well
19    aware of his rights under <u>Miranda v. Arizona</u>, <u>supra</u>, 384 U.S. 436
     [16 L.Ed.2d 694].  Minter did not badger or pressure defendant, but
20    consistently treated defendant with respect.  The fact that defendant
     continued to speak to Minter without any hesitation whatsoever
21    indicates he freely waived his right to have his attorney present
     during questioning.
22
     Counsel was not ineffective for failing to object to the interview on
23    <u>Miranda</u> grounds because the objection was not meritorious.

24  (<u>Id.</u> at 9.)

25    "The prosecution may not use statements, whether exculpatory or inculpatory,

26  stemming from custodial interrogation of the defendant unless it demonstrates the use of

8

1    procedural safeguards effective to secure the privilege against self-incrimination." Miranda v.

2    Arizona, 384 U.S. at 444.  To this end, custodial interrogation must be preceded by advice to the

3    potential defendant that he has the right to consult with a lawyer, the right to remain silent and

4    that anything stated can be used in evidence against him.  Id. at 473-74.  Once Miranda warnings

5    have been given, if a suspect makes an unambiguous statement invoking his constitutional rights,

6    "all questioning must cease." Smith v. Illinois 469 U.S. 91, 98 (1984).  See also Miranda, 384

7    U.S. at 473-74; Michigan v. Mosley, 423 U.S. 96, 100 (1975).  Any subsequent statements are

8    relevant only to the question whether the accused waived the right he had previously invoked.

9    Smith, 469 U.S. at 98.  "Invocation and waiver are entirely distinct inquiries, and the two must

10   not be blurred by merging them together." Id.[4]

11           With respect to an accused's request for counsel, the Supreme Court has

12   established a "bright-line rule" that all questioning must cease once such a request is made.

13   Edwards v. Arizona, 451 U.S. 477, 485 (1981).  Therefore, a suspect who invokes the right to

14   counsel cannot be questioned unless an attorney is present or the suspect reinitiates the

15   conversation.  Id. at 484-85.  Under the holding in Edwards, courts must "determine whether the

16

17           [4]  Regarding a suspect's waiver of the right to remain silent it has been observed:

18      Precisely when waiver may be implied depends on the circumstances.  Even so,
        there are certain types of cases in which courts routinely conclude that a defendant
19      who has professed an understanding of his right to remain silent has waived that
        right.  For example, a defendant will be held to have effected a waiver when, after
20      receiving warnings and asserting (equivocally or unequivocally) a right to remain
        silent, he spontaneously recommences the dialogue with his interviewers.
21      [citations omitted].  So, too, if a defendant's incriminating statements were made
        either as part of a "steady stream" of speech, Bradley v. Meachum, 918 F.2d 338,
22      342 (2d Cir. 1990), or as part of a back-and-forth conversation with the police,
        Baskin v. Clark, 956 F.2d 142, 146 (7th Cir. 1992), courts regularly have found
23      waivers.  A waiver of Miranda rights also may be implied when, after having
        received Miranda warnings, a criminal defendant responds selectively to questions
24      posed to him.  See United States v. Soliz, 129 F.3d 499, 503 (9th Cir. 1997);
        United States v. Eaton, 890 F.2d 511, 513-14 (1st Cir. 1989) (Breyer, J.); United
25      States v. Chong, 829 F.2d 1572, 1574 (11th Cir. 1987).

26   Bui v. Dipaolo, 170 F.3d 232, 240 (1st Cir. 1999).

1  accused actually invoked his right to counsel." Davis v. United States, 512 U.S. 452, 458 (1994).

2  The inquiry is an objective one.  Id. at 459.  At a minimum, invocation of the right to counsel

3  requires "some statement that reasonably can be construed to be an expression of a desire for the

4  assistance of an attorney." Paulino v. Castro, 371 F.3d 1083, 1087 (9th Cir. 2004) (internal

5  quotations and citation omitted).  To invoke the right to counsel, a suspect must

6  "unambiguously" request counsel:

7          reference to an attorney that is ambiguous or equivocal in that a
   reasonable officer in light of the circumstances would have
8          understood only that the suspect might be invoking the right to
   counsel ··· do[es] not require the cessation of questioning.

9

10  Davis, 512 U.S. at 459.  Accord Paulino, 371 F.3d at 1087.

11          This court concludes that petitioner's statements regarding "a lawyer" were

12  ambiguous and did not constitute an unequivocal request for counsel.  See Davis, 512 U.S. at 462

13  (finding that the statement, "[m]aybe I should talk to a lawyer," was ambiguous, and hence was

14  not a request for counsel); United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005)

15  (defendant's question, "[b]ut, excuse me, if I am right, I can have a lawyer present through all

16  this, right?" was insufficient to constitute an unambiguous request for counsel); Clark v. Murphy,

17  331 F.3d 1062, 1066 (9th Cir. 2003) (defendant's statement "I think I would like to talk to a

18  lawyer" was ambiguous, and therefore the police were not required to cease questioning); Diaz v.

19  Senkowski, 76 F.3d 61, 63 (2d Cir. 1996) (suspect's statement "[d]o you think I need a lawyer"

20  was ambiguous within the meaning of Davis); United States v. Ogbuehi, 18 F.3d 807, 813 (9th

21  Cir. 1994) (defendant's question, "Do I need a lawyer" or "Do you think I need a lawyer" does

22  not "rise to the level of even an equivocal request for an attorney").  The conclusion of the state

23  appellate court to the same effect is not objectively unreasonable.

24          Even if petitioner did unambiguously request counsel, it is reasonable to conclude,

25  as the state courts did, that petitioner initiated further conversation with the authorities after he

26  invoked his right to counsel.  Immediately after making the statement that "it seem like what I

1   need is a lawyer," petitioner resumed his conversation with the detective.  The transcript of the

2   police interview indicates that petitioner wished to continue with the substance of the ongoing

3   interrogation.  (See CT 126-36.)  Because petitioner, and not the police, reopened a substantive

4   dialogue with the authorities, the "bright-line" rule of Edwards did not prohibit further

5   questioning.  See Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983); United States v. Michaud,

6   268 F.3d 728, 735-38 (9th Cir. 2001).[5]

7          The state appellate court also found that petitioner made a knowing and intelligent

8   waiver of his right to counsel.  This determination depends "upon the particular facts and

9   circumstances surrounding the case, including the background, experience, and conduct of the

10  accused."  North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) (quoting Johnson v. Zerbst,

11  304 U.S. 458, 464 (1938)).  There is no evidence here that the police made any threats or

12  promises or offered any inducements to petitioner in order to get him to talk.  Petitioner agreed to

13  speak with the officers about the crime and continued the conversation after his brief and

14  ambiguous reference to the need for a lawyer.  Under these circumstances, petitioner could be

15  subjected to further interrogation after having previously invoked his right to counsel and his

16  confession was both voluntary and obtained following a knowing waiver of his right to counsel.

17         An attorney's failure to make a meritless objection or motion does not constitute

18  ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing

19  Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)).  See also Rupe v. Wood, 93 F.3d 1434,

20  1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").  A

21  motion challenging the admissibility of petitioner's statements to police on Miranda grounds

22  /////

23

24         [5]  The rule established in Edwards was "designed to prevent police from badgering a
    defendant into waiving his previously asserted Miranda rights."  Michigan v. Harvey, 494 U.S.
25  344, 350 (1990).  See also Michaud, 268 F.3d at 737.  There is no evidence here that law
    enforcement officials attempted to coerce petitioner into waiving his rights or continuing the
26  interrogation in violation of his constitutional rights.

                                              11

would have been futile.  Accordingly, counsel was not ineffective in failing to make such a

challenge.  For these reasons, petitioner is not entitled to relief on this claim.

### 3.  Counsel's Failure to Redact the Videotape of Petitioner's Interrogation

Petitioner next claims that his trial counsel rendered ineffective assistance by

failing to redact from the videotaped police interview, shown to the jury, petitioner's reference to

his prior criminal history.  The California Court of Appeal fairly described the background to this

claim as follows:

> The court granted defendant's pretrial motion to bifurcate the trial
> of the prior convictions.  Prior to trial the parties stipulated that
> defendant was a felon and that there would be no reference to the
> basis for defendant's status as a felon.  The jury was shown
> defendant's videotaped interview with Minter, and was given a
> written transcript of the interview.  In the interview, the following
> exchange occurred:
>
> "[Defendant]: It ain't nothing.  When we going to the jail?  When
> am I going to the jail?
>
> "[Minter]: Soon as we're done talking.
>
> "[Defendant]: I mean, 'cause this – uh, I mean, you already done –
> I'm guilty of something – Sh – (Audible gesture.)
>
> "[Minter]: Are you?
>
> "[Defendant]: I mean, because – Hell, no.  The only thing – the
> main thing y'all look at, that's the whole thing, uh, even about my
> job.  Just because you done committed robbery before, you done
> done this before, you already guilty.  If – if you was in it, you done
> it.
>
> "[Minter]: Look –
>
> "[Defendant]: And that's the whole way people look at this
> (Inaudible):
>
> "[Minter]: (Audible gesture.)  Your past has nothing to do with
> this, John.  Okay?  The pa – the – the situation's want of
> everything that's found tonight.  Okay?"
>
> After the jury saw the videotape, and outside the jury's presence,
> defense counsel informed the court he had failed to redact
> defendant's reference to the prior robberies.  Defense counsel
> stated:

1

2

3

4
"... I don't know what we do about it.  As I view it – and it's not a defense of my failure to sanitize the transcript or the tape recording.  If you simply look at or listen to the transcript, it goes by and it doesn't seem to mean a whole lot.  Where it looks bad is words in the transcript.  It seems to me to have more impact if you read it than what actually is heard on the tape."

5
The court decided to issue a limiting instruction.  It instructed the jury as follows:

6

7

8

9

10

11

12
"Count 2 of the information alleges a violation of Penal Code Section 12021(a), which is possession of a firearm by a person who has been convicted of a felony.  The parties have stipulated that the Defendant Mr. Oliver has been convicted of a felony.  The nature of the conviction is not relevant to any issue in this case.  You are therefore not to consider, not to discuss, not to speculate regarding the prior conviction which forms the basis of the stipulation.  You will decide Count 2 based on the Court's instructions that you will receive at the conclusion of the evidence and after argument by the attorneys and the law and the facts as you find them to be true based upon the evidence presented in this trial and not of any other sources.

13

14

15

16
"I've tried to make this as clear as I can, ladies and gentlemen.  The nature of any prior conviction or why, when, where is completely irrelevant to this case.  All right.  I hope I've made myself clear on that.  You are not to discuss it or speculate any further at this point in time.  Simply accept the fact that he is a felon and determine if in fact the evidence has been sufficient to prove the elements of the crime here in this case alone."

17
(Opinion at 11-12.)

18
        The California Court of Appeal recognized that petitioner's trial counsel admitted

19
error.  However, the court concluded that the error was harmless, explaining as follows:

20

21

22

23
Defendant's reference to his prior conviction was a brief reference in a lengthy interview.  We viewed the tape, and found the comment difficult to understand.  There is a good chance the jury did not notice it.  If they did, they were thoroughly instructed by the trial court not to consider the nature of any prior conviction.  We presume the jury followed the court's instructions.  (citations omitted).

24

25
It is not reasonably probable that defendant would have obtained a more favorable result had the tape and transcript been sanitized.

26
(Id. at 12.)

1   The state court's conclusion that trial counsel's error did not result in prejudice is

2   not objectively unreasonable.  As explained by the state court, the jury knew that petitioner was

3   charged with being a felon in possession of a weapon.  Therefore, they were aware that petitioner

4   had suffered a prior conviction.  The jurors are assumed to have followed the trial court's

5   instruction advising them not to consider the nature of that prior conviction when deciding

6   whether petitioner was guilty of the charged robbery.  See Richardson v. Marsh, 481 U.S. 200,

7   211 (1987) ("juries are presumed to follow their instructions"); Aguilar v. Alexander, 125 F.3d

8   815, 820 (9th Cir. 1997) (same).  This court agrees with the state courts that there is no

9   reasonable probability the outcome of petitioner's trial would have been different even if

10  petitioner's trial counsel had successfully moved to redact the videotape to eliminate any

11  reference to petitioner's prior robbery conviction.  Accordingly, petitioner is not entitled to relief

12  on this claim.

13          4.  Failure to Request Mistrial

14          Petitioner claims that his trial counsel rendered ineffective assistance when he

15  failed to seek a mistrial after the jury heard and received a transcript of the unredacted videotape

16  of petitioner's police interview, described above.

17          The California Court of Appeal rejected this argument on the ground that counsel

18  made a reasonable tactical decision not to seek a mistrial.  (Opinion at 12-13.)  The court

19  explained its reasoning as follows:

20          Defendant's trial counsel's made a tactical decision not to request a
            mistrial.  He told the court:

21
            "An option if the Court were to consider it would be to request a
22          mistrial, not because of misconduct, but it would be perhaps
            because of neglect or inadvertence on the part of one or both
23          attorneys.

24          "I don't want to do that, and I'll tell you why on the record.  As the
            evidence has gone in this case, I think Johnny has as good a chance
25          as he's ever going to have.  I don't think it's going to get any better
            if it's retried.  It may get worse.  So I don't want to ask for a
26          mistrial."

1

* * *

2  We defer to the trial counsel's tactical decision, and note the trial
   court commented such strategy "may very well be appropriate."
3

4  Defendant has not shown counsel's conduct fell outside the range
   of competent representation.

5  (Id.)

6          The opinion of the state appellate court rejecting this claim of ineffective

7  assistance of counsel is not "objectively unreasonable" and should not be set aside.  See Lockyer

8  v. Andrade, 538 U.S. 63, 75 (2003).  As described by the state court, petitioner's trial counsel

9  made a tactical decision not to request a mistrial because he did not want to risk subjecting

10 petitioner to a new trial under less favorable circumstances.  This was a sound choice of tactics

11 under the circumstances of this case.  Where trial counsel makes a "difficult but thoughtful

12 tactical decision," a reviewing court must presume that counsel's conduct was "within the range

13 of competency."  Harris v. Pulley, 885 F.2d 1354, 1368 (9th Cir. 1988).  "Counsel's tactical

14 decisions are 'virtually unchallengeable.'"  Furman v. Wood, 190 F.3d 1002, 1006 (9th Cir.

15 1999) (citing Strickland, 466 U.S. at 687).  Accordingly, petitioner is not entitled to relief on this

16 claim.

17          5.  Jury Instructions

18          Petitioner claims that his trial counsel rendered ineffective assistance by failing to

19 request or failing to object to several jury instructions.  The court will evaluate these claims in

20 turn below.

21          a.  Failure to Request a Pinpoint Instruction with Respect to CALJIC No. 12.44

22          Petitioner first argues that his trial counsel rendered ineffective assistance when he

23 failed to request a "pinpoint" instruction with respect to CALJIC No. 12.44.

24          The state court record reflects that petitioner's jury was instructed with CALJIC

25 No. 12.44, as follows:

26 /////

15

Defendant is accused in Count 2 of having violated Section 12021 subsection (a)(1) of the Penal Code, a crime.  Every person who having previously been convicted of a felony owns or has in his possession or under his custody or control any pistol, revolver or other firearm is guilty of a violation of Section 12021 subsection (a)(1) of the Penal Code, a crime.  In this case the previous felony conviction has already been established by stipulation so that no further proof of that fact is required.  You must accept as true the existence of this previous felony conviction. [¶] In order to prove this crime each of the following elements must be proved: One, the Defendant had in his possession a handgun; and, two, the Defendant had knowledge of the presence of the handgun."

(CT at 197.)  Relying on a California law, petitioner argued on appeal that his trial counsel should have requested a clarifying jury instruction because CALJIC No. 12.44 "fails to define possession, relate possession to intent, or instruct the jury that unintentional possession is not criminal."  (Opinion at 14.)  The California Court of Appeal rejected petitioner's argument in this regard on appeal, reasoning as follows:

Defendant's argument is based on People v. Jeffers (1996) 41 Cal.App.4th 917.  In that case the defendant was convicted of violating section 12021 when he made a delivery for a friend to a gunsmith.  (Id. at p. 919.)  The gun he delivered was wrapped in a box, and there was evidence the defendant did not know what was in the box.  (Id. at pp. 919, 921.)

The Jeffers court did not instruct the jury regarding the required criminal intent (CALJIC No. 3.30)[6] and refused to give the defendant's requested pinpoint instruction.  The defendant's pinpoint instruction told the jury a convicted felon did not automatically violate section 12021 if he unknowingly possessed a firearm, and upon acquiring knowledge of the firearm took steps to rid himself of the firearm within a reasonable time.  (41 Cal.App.4th at pp. 920-921.)  The Jeffers court held the defendant's proposed pinpoint instruction was flawed in some respects, but that it was a reasonable attempt to articulate a valid legal principle supported by the evidence.  (Id. at p. 925.)  The court then stated: "[h]ad the jury been instructed properly regarding general intent, we would have confidence this legal principle was

---

[6] CALJIC No. 3.30 provides in part that in the crime alleged "there must exist a union or joint operation of act or conduct and general criminal intent.  General intent does not require an intent to violate the law.  When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

1    considered by the jury in reaching its verdict.  However, the failure
     to so instruct compels reversal."  (Ibid.)
2
     In this case the jury was properly instructed regarding general
3    intent.  Moreover, since the jury also found defendant guilty of
     robbery, they must necessarily have found he intentionally
4    possessed the gun.

5    In the absence of prejudice, defense counsel's failure to request an
     instruction cannot be characterized as constitutionally deficient
6    representation.  (People v. Stankewitz (1990) 51 Cal.3d 72, 113-
     114.)  On this record, defendant was not prejudiced by counsel's
7    failure to request a pinpoint instruction.

8    (Id. at 14-15.)

9           Of course, the conclusion of the California Court of Appeal that under state law,

10   petitioner was not entitled to a pinpoint jury instruction may not be set aside in this federal

11   habeas corpus action.  Middleton, 768 F.2d at 1085 (a federal writ is not available for alleged

12   error in the interpretation or application of state law).  More importantly for purposes of the

13   pending claim, the state appellate court's decision that petitioner was not prejudiced by the lack

14   of a pinpoint instruction is not objectively unreasonable and should not be set aside.  As pointed

15   out by the state court, the jurors in petitioner's case found that he had a firearm in his possession

16   when they rendered a guilty verdict on the robbery count.  In addition, the jury was instructed that

17   petitioner had stipulated to being a convicted felon.  Under these circumstances, there is no

18   reasonable probability that the outcome of petitioner's trial would have been different if his trial

19   counsel had requested a pinpoint jury instruction clarifying CALJIC No. 12.44.  See Clabourne v.

20   Lewis, 64 F.3d 1373, 1383 (9th Cir. 1995) (any failure to request a limiting instruction found

21   harmless in light of the evidence already admitted).  Accordingly, petitioner is not entitled to

22   relief on this claim.

23           b.  Failure to Request Pinpoint Instruction with Respect to CALJIC No. 12.85

24           Petitioner argues that his trial counsel rendered ineffective assistance in failing to

25   supplement CALJIC No. 12.85 with a pinpoint instruction defining the terms "willful" and

26   "wanton."  The California Court of Appeal rejected this argument with the following reasoning:

                                                    17

1    CALJIC No. 12.85 provides in part, "Every person who flees or
     attempts to elude a pursuing peace officer in violation of Vehicle
2    Code section 2800.1, subdivision (a), and drives the pursued
     vehicle in a willful or wanton disregard for the safety of persons or
3    property is guilty of a violation of Vehicle Code section 2800.2,
     subdivision (a), a felony."
4
     In this case, the instruction given by the court included the
5    following definition: "[w]illful or wanton means an act or acts
     intentionally performed with a conscious disregard for the safety of
6    persons or property.  It does not necessarily include an intent to
     injure."  The instruction given adequately defined the terms
7    "willful" and "wanton" for the jury.  Because competent counsel
     could have concluded the instructions given by the court were
8    adequate, counsel was not ineffective for failing to request a
     pinpoint instruction.  (People v. Castillo (1997) 16 Cal.4th 1009,
9    1018.)

10   (Opinion at 15-16.)

11           This court agrees that the jury instruction given at petitioner's trial adequately

12   defined the terms "willful" and "wanton."  (See CT at 195.)  It cannot be concluded that the

13   failure of petitioner's counsel to request further clarification of these terms fell below an

14   objective standard of reasonableness or was outside the wide range of professionally competent

15   assistance.  See Weighall v. Middle, 215 F.3d 1058, 1063 (9th Cir. 2000) (no ineffective

16   assistance of counsel due to failure to request a clarifying instruction where the evidence, the

17   general jury instructions and counsel's argument put the relevant issue before the jury).  Further,

18   there is no reasonable probability that, but for trial counsel's failure to request a "pinpoint"

19   instruction, the result of the proceeding would have been different.  See Clabourne, 64 F.3d at

20   1383.  The state appellate court did not unreasonably apply Strickland in rejecting petitioner's

21   argument in this regard.  Accordingly, petitioner is not entitled to relief.

22               c.  Failure to Object to CALJIC No. 2.15

23           Petitioner claims that his trial counsel rendered ineffective assistance when he

24   failed to object to the giving of CALJIC No. 2.15, "wherein the trial court characterized the

25   money found in Oliver's possession as being 'recently stolen.'" (Am. Pet. at page marked "B.")

26   The California Court of Appeal rejected this argument on appeal, stating as follows:

The court read the following instruction to the jury:

"If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the Defendant is guilty of the crime of robbery.  Before guilt may be inferred there must be corroborating evidence tending to prove Defendant's guilt . . . ."

Defendant claims by giving this instruction the trial court "predetermined for the jury that the money appellant was in possession of was the money from the robbery." In People v. Morris (1988) 46 Cal.3d 1, 40, the defendant contended the court should not have instructed the jury with CALJIC No. 2.15 because there was insufficient evidence to show either that he was in possession of property or that the property was stolen.  The Supreme Court agreed, stating: "It is clear . . . that where the evidence relating to 'possession' is conflicting or unclear, an unqualified instruction pursuant to CALJIC No. 2.15 should not be given, for it could easily mislead the jury into assuming that the defendant's possession has been established when, in actuality, the issue is in doubt."  (Ibid.)

However, the instruction given by the court in People v. Morris, supra, was unqualified.  The court told the jury that the defendant's "'conscious possession of recently stolen property . . . [while] . . . not enough to justify his conviction . . . is, however, a circumstance to be considered in connection with other evidence.'" (People v. Morris, supra, 46 Cal.3d at p. 40, disapproved on other grounds in In re Sassounian (1995) 9 Cal.4th 535, 543-545, fns. 5, 6.)

Here, unlike People v. Morris, supra, the instruction was not unqualified in a way that might imply the defendant in fact possessed stolen property.  (People v. Williams (2000) 79 Cal.App.4th 1157, 1172.)  The trial court correctly informed the jury the instruction applied only "if" the jury found the defendant was in conscious possession of recently stolen property.  The court did not err in giving the instruction and the defendant's trial counsel was not deficient for failing to object to it.

(Opinion at 16-17.)

The decision of the state appellate court rejecting this claim is not contrary to or an unreasonable application of Strickland and should not be set aside.  As explained by the state court, the challenged jury instruction was not violative of California law.  Moreover, contrary to petitioner's allegation, the instruction did not characterize the money found in petitioner's possession as being recently stolen.  Rather, petitioner's jurors were informed that in the event

they found petitioner was in "conscious possession" of stolen property, they could not use that

fact alone to find him guilty of robbery.  This language was neither erroneous nor prejudicial.

Petitioner's trial counsel did not render ineffective assistance in failing to object to the giving of

CALJIC No. 2.15.

### d.  Failure to Request CALJIC Nos. 2.91 and 2.92

Petitioner claims that his trial counsel also rendered ineffective assistance when

he failed to ask the trial court to instruct the jury with CALJIC Nos. 2.91 and 2.92.  The

California Court of Appeal rejected this argument on appeal with the following reasoning:

> These instructions caution the jury that is must consider certain
> circumstances surrounding a witness's identification of the
> defendant when determining whether the defendant has been
> proven guilty beyond a reasonable doubt.
>
> CALJIC No. 2.91 provides:
>
> "The burden is on the People to prove beyond a reasonable doubt
> that the defendant is the person who committed the crime with
> which he is charged.
>
> "If, after considering the circumstances of the identification . . . ,
> you have a reasonable doubt whether defendant was the person
> who committed the crime, you must give the defendant the benefit
> of that doubt and find him not guilty."
>
> CALJIC No. 2.92 provides:
>
> "Eyewitness testimony has been received in this trial for the
> purpose of identifying the defendant as the perpetrator of the crime
> charged.  In determining the weight to be given eyewitness
> identification testimony, you should consider the believability of
> the eyewitness as well as other factors which bear upon the
> accuracy of the witness's identification of the defendant, including,
> but not limited to, any of the following:
>
> "The opportunity of the witness to observe the alleged criminal act
> and the perpetrator of the act;
>
> "The stress, if any, to which the witness was subjected at the time
> of the observation;
>
> "The witness's ability, following the observation, to provide a
> description of the perpetrator of the act;

"The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness;

"The cross-racial or ethnic nature of the identification;

"The witness's capacity to make an identification;

"Evidence relating to the witness's ability to identify other alleged perpetrators of the criminal act;

"Whether the witness was able to identify the alleged perpetrator in a photographic or physical lineup;

"The period of time between the alleged criminal act and the witness's identification;

"Whether the witness had prior contacts with the alleged perpetrator;

"The extent to which the witness is either certain or uncertain of the identification;

"Whether the witness's identification is in fact the product of his own recollection; and

"Any other evidence relating to the witness's ability to make an identification."

As previously explained, we will affirm the judgment to the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged.  The only exception is where trial counsel was asked for an explanation and failed to provide one, or where there could be no satisfactory explanation.  (People v. Pope, supra, 23 Cal.3d at p. 426; People v. Bolin, supra, 18 Cal.4th at p. 333.)

In the present case trial counsel was not asked for an explanation for his failure to request the instructions at issue, and it appears there could have been a satisfactory explanation for his failure to do so.  Atchison was not able to positively identify defendant's face.  He was only able to identify some of defendant's clothing. There were several inconsistencies in his description of the clothing worn by the robber and the clothing found on defendant. The defense theory to explain away Atchison's testimony was to emphasize the inconsistencies and argue Atchison fabricated the identification because he wanted the ordeal to be over.  An instruction telling the jury to consider the stress the witness was under, the witness's opportunity to observe the perpetrator, etc., actually might have helped the prosecution by pointing out that there were valid reasons for Atchison's inconsistencies.

1

2

3

4

5

> Additionally, trial counsel brought out the fact that Atchison had little opportunity to observe the robber.  He could have had tactical reasons for not wanting to emphasize all portions of the instructions.  In any event, trial counsel's argument with regard to all of the inconsistencies in Atchison's description was an implicit comment on the witness's ability to identify defendant, thus any error in failing to request the instruction was harmless.  (People v. Stankewitz, supra, 51 Cal.3d at pp. 113-114.)

6   (Opinion at 18-20.)

7           The state appellate court reasonably concluded that the decision of petitioner's

8   counsel not to request the giving of CALJIC Nos. 2.91 and 2.92 was neither incompetent nor

9   prejudicial.  As explained above, this court must apply a strong presumption that counsel

10  "exercised acceptable professional judgment in all significant decisions made."  Hughes, 898

11  F.2d at 702.  See also Strickland, 466 U.S. at 690 ("counsel is strongly presumed to have

12  rendered adequate assistance").  Under the circumstances of this case, as explained by the state

13  appellate court, defense counsel's decision not to request these two jury instructions was

14  reasonable in light of the defense theory that the victim simply fabricated the identification of

15  petitioner.  Further, the failure to give this instruction was not prejudicial in light of defense

16  counsel's attack on the inconsistencies in the victim's eyewitness identification.  This court

17  cannot find that the state appellate court unreasonably applied federal law in rejecting this claim.

18  Accordingly, petitioner is not entitled to habeas relief.

19      B.  Motion for New Trial

20          Petitioner claims that the trial court erred in denying his motion for new trial

21  based on ineffective assistance of counsel.  The California Court of Appeal rejected this

22  argument, stating as follows:

23

24

25

> Defendant made a motion for new trial, arguing he received ineffective assistance of counsel at the trial for the same reasons he makes in his argument on appeal.  Defendant claims the trial court erred in denying his motion for new trial because the record was "replete with examples of defense counsel's ineffective assistance."

26

1                    We have determined defendant has no viable claim he received
ineffective assistance of counsel, thus the trial court did not err in
2                    denying defendant's motion.

3 (Opinion at 20-21.)

4         For the reasons set forth above, this court has also concluded that petitioner's trial

5 counsel did not render ineffective assistance.   Accordingly, the trial court did not err in denying

6 petitioner's motion for new trial.  The decision of the state appellate court to the same effect is

7 not contrary to or an unreasonable application of clearly established federal law.  Therefore,

8 petitioner is not entitled to relief on this claim.

9       C.  Sentencing Error

10         Petitioner raises two claims of sentencing error.  First, he claims that the trial

11 court erred in sentencing him to consecutive terms pursuant to California Penal Code §

12 667(c)(6).    Second, petitioner claims that the trial court erred in failing to strike one of his prior

13 convictions in the interests of justice.  Applying state sentencing law, the California Court of

14 Appeal rejected both of these arguments on appeal.  (Opinion at 21-23, 24-26.)

15         Petitioner's claims of sentencing error are not cognizable in this federal habeas

16 corpus proceeding.  Habeas corpus relief is unavailable for alleged errors in the interpretation or

17 application of state sentencing laws by either a state trial court or appellate court.  Cacoperdo v.

18 Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("[t]he decision whether to impose sentences

19 concurrently or consecutively is a matter of state criminal procedure and is not within the

20 purview of federal habeas corpus); Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993).  So

21 long as a state sentence "is not based on any proscribed federal grounds such as being cruel and

22 unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of

23 state statutes are matters of state concern." Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th

24 Cir. 1976).  The Ninth Circuit has specifically refused to consider on habeas review claims of

25 erroneous application of state sentencing law by state courts.  See, e.g., Miller v. Vasquez, 868

26 F.2d 1116 (9th Cir. 1989) (holding that whether assault with a deadly weapon qualifies as a

1  "serious felony" under California's sentence enhancement provisions is a question of state

2  sentencing law and does not state a constitutional claim).

3        Petitioner has not pointed to any federal court decision in support of his claim that

4  the state court erroneously sentenced him to consecutive terms or failed to strike one of his prior

5  convictions. See Holgerson v. Knowles, 309 F.3d 1200, 1201-02 (9th Cir. 2002) (in determining

6  in a habeas action whether out-of-state convictions were properly considered in sentencing

7  petitioner under California's Three Strikes Law, the question is not whether the California

8  Supreme Court was correct but whether California's decision to affirm the judgment of

9  conviction was contrary to, or involved an unreasonable application of, clearly established

10  federal law), cert. denied, 538 U.S. 1005 (2003).   Accordingly, the opinion of the California

11  Court of Appeal rejecting petitioner's argument in this regard is neither contrary to, nor an

12  unreasonable application of, clearly established federal law.

13        For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

14  application for a writ of habeas corpus be denied.

15        These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within ten days after service of the objections.  The parties are advised

21  that failure to file objections within the specified time may waive the right to appeal the District

22  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23  DATED: July 25, 2006.

24

25                  _____

                  DALE A. DROZD

26  DAD:8:oliver1147.hc               UNITED STATES MAGISTRATE JUDGE